Com. of Pa. *v.* West Philadelphia Fidelio
Mannerchor, Appellant.

242

Argued October 8, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER and JAMES, JJ.

*Joseph Sharfsin,* and with him *Jacob S. Richman,*
for appellant.—A criminal statute must be strictly
construed: Commonwealth v. Lanzetti, 97 Pa. Su-
perior Ct. 126; Philadelphia v. Costello, 17 Pa. Su-
perior Ct. 339.

*Wilhelm F. Knauer,* Special Deputy Attorney Gen-
eral, and with him *Horace A. Segelbaum,* Special Dep-
uty Attorney General and *Wm. A. Schnader,* Attor-
ney General, for appellee.—Remarks of members of
the Legislature are not to be considered in construing
a statute: Cumberland County v. Boyd, 113 Pa. 52.

*Wm. Clark Mason,* and with him *Morgan, Lewis &
Bockius,* for Penn Athletic Club, Amicus Curiae, cited:
Duplex Co. v. Deering, 254 U. S. 443; U. S. v. Shreeve-
port Grain & Elevator Co., 287 U. S. 77.

OPINION BY PARKER, J., November 22, 1934:

This is an appeal by the West Philadelphia Fidelio Mannerchor, an incorporated club, from an order of the court of common pleas revoking a liquor license under Section 410 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. Special Session 15 (47 PS 744-410). That section provides that on petition of the attorney general, the district attorney, or fifteen or more tax payers, residents of the municipality where the hotel, restaurant, or club is located, the court of common pleas may, after hearing, suspend or revoke the license where it shall appear to the court that the licensee has violated any law of this Commonwealth, and that ''the action of the court in suspending or revoking a license shall be final.''

The last clause does not affect our right to issue a writ of certiorari in order to determine, from an inspection of the record, whether or not the court below exceeded its jurisdiction and for the purpose of correcting errors apparent on the face of the record, and with this object in view it is proper to examine the opinion of the court in order to discover the reasons for its action: 28th Congressional District Nomination, 268 Pa. 313, 321, 112 A. 74; 21st Senatorial District Nomination, 281 Pa. 273, 278, 126 A. 566; Luzerne County Election Returns, 301 Pa. 247, 151 A. 897; Plains Township Election Returns, 280 Pa. 520, 124 A. 678.

An inspection of the record discloses the facts that the appellant had received a license under the Liquor Control Act; that it had made sales of liquor on Sunday; and that the lower court revoked the license for the sole reason that such sales so made on Sunday were a violation of Section 411 of that act. It is conceded by both appellant and appellee that the only question for our determination is whether the section in question prohibits the sale of liquor by a club on

Sunday. The portion of the section with which we are concerned is as follows: "Liquor may be sold by licensees, other than clubs, only after seven o'clock antemeridian of any weekday and until two antemeridian of the following week day, and shall not be sold on Sunday or on any day on which a general, municipal, special or primary election is being held."

The contentions of the appellant are that the paragraph in question is ambiguous and capable of two meanings; that the clause is not so clear in its meaning that it would support an order which imposes a penalty on the respondent; that in aid of determining the meaning of the clause it is proper to have recourse to the debates among members of the legislature at the time of the passing of the statute; and that such debates indicate an intention upon the part of the legislature to exclude clubs from the provision prohibiting a sale upon Sunday.

It has been held in the construction of penal statutes that where an act contains such an ambiguity as to leave a reasonable doubt of its meaning, it is the duty of the court not to inflict the penalty. It is equally true "that where the words of a statute are plain and clearly define its scope and limit, construction cannot extend it": Grayson v. Aiman, 252 Pa. 461, 466, 97 A. 695. Taking the plain words of the clause we have for consideration, we do not find the meaning ambiguous. Two subjects are dealt with, sales between 2 A. M. and 7 A. M. and sales on Sunday and election days. Liquor may be sold by licensees *other than clubs* only after 7 A. M. and before 2 A. M. of the following week day and shall not be sold on Sunday or election days. There is not any exception contained in the provision proscribing sales on Sunday and election days. By a strict grammatical construction, the subject of the predicate in the last portion of the paragraph is the word "liquor." The appellant asks us to supply an

exception which would change the plain meaning of the act. In other words, the ambiguity is not in the act but only arises by reason of the suggestion that a clause be supplied.

We have so far considered only a literal interpretation of the paragraph. The literal construction has a prima facie preference. "To arrive at the real meaning, it is always necessary to take a broad general view of the Act, so as to get an exact conception of its aim, scope and object": Endlich on Interpretation of Statutes, p. 35. According to Lord Coke, it is necessary to consider the old law, the mischief and remedy: County of Cumberland v. Boyd, 113 Pa. 52, 4 A. 346. The Liquor Control Act, just as the Brooks law (Raudenbusch's Petition, 120 Pa. 328, 340, 341, 14 A. 148), was enacted for the purpose of regulating and restraining the sale of liquor and not for the purpose of promoting it. Such is the expressed purpose as contained in the title and in Section 3 dealing with the interpretation of the act. It is significant that in fixing the license fees to be paid by clubs, it is provided that where clubs "cater to groups of non-members, either privately or for functions," they shall be required to pay the same license fee as is paid by hotels and restaurants situated in the same municipality. Not only clubs which cater to other than members, but even those which sell to their members are made subject to the provision of the statute. In construing the law prohibiting sales. on Sunday and on election days, we are asked to supply an exception which would remove clubs from the prohibition. These words are not in the clause and we are not justified in reading them in, in the absence of any reason for so doing. The construction urged by the appellant would affect not only sales upon Sunday but those upon election days, and all the evils resulting from the free distribution of liquor upon election days would

be promoted and not regulated if we adopted the contention of the appellant.

The argument which is urged most seriously by the appellant is based upon certain remarks made by members of the House when the act was being debated during its consideration. While we are of the opinion that the only safe guide in the instant case is the plain meaning of the act as expressed in the statute considered in the light to which we have heretofore referred, nevertheless those debates do not furnish a basis for a different construction even though we consider them.

"In giving construction to a statute we cannot be controlled by the views expressed by a few members of the Legislature who expressed verbal opinions on its passage. These opinions may or may not have been entertained by the more than a hundred members who gave no such expression. The declarations of some and the assumed acquiescence of others therein, cannot be adopted as a true interpretation of the statute": County of Cumberland v. Boyd, supra, p. 57. There is, however, authority for the consideration of reports of committees having a bill in charge or of a commission appointed to codify the law upon a given subject. In the late case of Tarlo's Estate, 315 Pa. 321, 324, 325, 172 A. 139, the modern view is thus expressed: "While it is true that the views expressed by those who draft or enact laws are not a safe guide when the courts are called upon to determine the meaning of the words employed therein (Cumberland v. Boyd, 113 Pa. 52; Lenhart v. Cambria Co., 29 Pa. Superior Ct. 350; Hood Rubber Co. v. Commissioner of Corporations and Taxation, 268 Mass. 355; Lapina v. Williams, 232 U. S. 78, 90; Gasoline Products Co. v. Champlin Co., 283 U. S. 494), yet in order to get at the old law, the mischief and the remedy and properly to understand and construe a statute embodying the

latter, the history of the enactment in question may always be considered: Miles's Est., 272 Pa. 329, 339; Com. v. Quaker City Cab Co., 287 Pa. 161, 169; Orlosky v. Haskell, 304 Pa. 57, 66. In Miles's Est., it was pointed out that the United States Supreme Court in Duplex Printing Press Co. v. Deering, 254 U. S. 443, determined that the report of a committee, having a bill in charge during its passage 'may be regarded [judicially] as an exposition of the legislative intent in a case where otherwise the meaning of a statute is obscure.' In that case, the Supreme Court said (page 474): 'By repeated decisions of this court it has come to be well established that the debates in Congress expressive of the views and motives of individual members are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose of the law-making body ...... But reports of committees of House or Senate stand upon a more solid footing, and may be regarded as an exposition of the legislative intent in a case where otherwise the meaning of a statute is obscure.' To the same effect are McDowell v. Addams, 45 Pa. 430; Whitaker's Est., 175 Pa. 139; Binns v. U. S., 194 U. S. 486. The report of a commission appointed to codify the law upon a given subject is entitled to even greater weight than the report of a committee; especially is this so where the legislature enacts the exact language of the commission's draft.''

When the bill was presented to the House, the paragraph in question did not contain the phrase ''other than clubs,'' but was passed on third reading with that phrase included (L. J., p. 195) and was presented to the Senate for concurrence. The Senate struck out the phrase and returned it to the House. On its return, Representative Sowers moved to amend the bill by reinstating the phrase. On debate a member of the House interrogated Mr. Sowers, who had offered the

amendment, as to its effect and Mr. Sowers replied as follows: "Mr. Speaker, as a lawyer I answer that clubs will not be permitted to sell liquor on Sunday. They will be permitted to distribute liquor among their members. Clubs never sold under the laws of Pennsylvania. When a club has liquor in its treasury, or in its possession, all of that liquor belongs to the entire membership, and a man cannot buy that of which he is a part owner, and there is a Supreme Court case to that effect." Mr. Wilson again interrogated Mr. Sowers, asking him for a more definite answer, and his final answer was that if the amendment prevailed, the same condition would be restored as existed under the Brooks High License Law. Mr. Wilson then interrogated Mr. McClure, who presented the original bill to the House, as to the meaning of the clause as follows: "Mr. Wilson: If this amendment of Mr. Sowers prevails, would clubs then be able to dispense liquor on Sunday. Mr. McClure: In my judgment they would be."

The constitution vests the legislative power of the Commonwealth in both the Senate and the House of Representatives and gives to the Governor the power of veto. When the Governor approved the bill, he said: "Fortunately, efforts in the House to permit sales in clubs on Sunday did not succeed." This presents a situation which demonstrates not only the wisdom of the rule that individual opinions of members are not of assistance in interpreting a statute, but demonstrates an absence of any such positive indication of the intention of the Legislature as would justify us in departing from the interpretation which we have given the paragraph.

Prior to the adoption of the 18th Amendment to the Federal Constitution, a club "organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and

formed for social, literary or other purposes, to which the furnishing of liquors to its members would be merely incidental, in the same way to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or letter of the law [Brooks Law]'': Klein v. Livingston Club, 177 Pa. 224, 232, 35 A. 606. By the Liquor Control Act of 1933, the Legislature provided for the licensing of all clubs and, as we have heretofore pointed out, provided one license fee where the sales are only to members and another and larger license fee, the same as that for hotels and restaurants, where the clubs cater to groups of non-members. In Section 3 of the act, dealing with its interpretation, the Legislature said: ''Except as otherwise expressly provided, the purpose of this act is to prohibit *transactions* in liquor which take place wholly within the Commonwealth, except by and under the control of the board.'' (Italics supplied.) The word ''transactions'' is much broader than ''sale and importation.'' It is impossible, after a consideration of the reasons given by the Supreme Court in the Livingston case for concluding that a dispensing of liquor for a price to members of a club of the kind indicated was not a sale, to come to any other conclusion than that the effect of the Livingston case has been nullified by the Legislature and that a dispensing of liquor by a club for a price to its members is now to be regarded as a sale and subject to the regulations of the Liquor Control Act. In that case the Supreme Court commented upon the fact that the Legislature had not indicated an intention to class such dispensing of liquors as a sale and that this was a matter within the control of the Legislature. The law-making department of the Commonwealth has now spoken upon the subject and it is definitely settled that a club must take out a license

before engaging in the sale of intoxicating liquor, even to its members.

It follows that such conclusions as were stated by the members of the Legislature were based on an incorrect interpretation of the law. In addition, it is of importance to note that the author of the amendment distinctly said that in his opinion a *sale* could not be made on Sunday, while the author of the bill only went so far as to say that liquor might be *dispensed* to members. It is most apparent that these opinions of members of the House furnish no basis for a different conclusion than that at which we have arrived. We are all of the opinion that the order should be affirmed.

The order of the court below is affirmed.