Riviera Country Club Liquor License Case.

Argued April 16, 1963. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Lewis J. Nescott,* Special Assistant Attorney General, with him *George G. Lindsay,* Assistant Attorney General, and *Walter E. Alessandroni,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Ralph S. Sapp,* with him *Alvin J. Porsche,* for appellee.

Opinion by Wright, J., June 12, 1963:

On March 13, 1961, the Riviera Country Club, a non-profit corporation, referred to hereinafter as Riviera, filed with the Pennsylvania Liquor Control Board an application for a club liquor license at prem-

ises in Wilkins Township, Allegheny County, Pennsylvania, on the theory that the municipality in question is located within a resort area. The Board refused the application, whereupon Riviera appealed to the County Court of Allegheny County. The matter was submitted to that tribunal for decision on the testimony taken on January 25, 1962, before the Board's examiner. By opinion and order dated May 1, 1962, the court below reversed the Board and directed that the license should be granted. This appeal by the Board followed.

We are here confronted with a recurring problem arising under the exception to the quota limitation set forth in subsection (b) of Section 461 of the Liquor Code,[1] which reads as follows: "(b) The board shall have the power to increase the number of licenses in any such municipality which in the opinion of the board is located within a resort area". The reasons assigned by the Board for rejecting the application were as follows: "2. As provided by law, Wilkins Township, Allegheny County, has a quota of five licenses for the retail sale of liquor and malt beverages. There are eight such licenses in effect of the type counted against the quota. Accordingly, the legal quota for the township is exceeded. There are also four club liquor licenses in effect which, under the law, are not counted against the quota. 3. The premises proposed to be licensed are not in a resort area, as claimed by the applicant. 4. While the club liquor license applied for would be a convenience for the members of the applicant organization, there is no evidence of actual necessity for an additional license for the retail sale of alcoholic beverages in the township".

Riviera received its charter from the Court of Common Pleas of Allegheny County on January 18, 1960. See *Riviera Country Club Liquor License Case*, 196 Pa.

---

[1] Act of April 12, 1951, P. L. 90, Section 461(b), 47 P.S. 4-461(b).

Superior Ct. 636, 176 A. 2d 704. Riviera owns a tract of eight and one-half acres in Wilkins Township, and leases another tract of approximately the same size. It is asserted in Riviera's brief, and not disputed, that some $600,000.00 has been expended thereon for existing facilities, which include swimming pools, ski slope and toboggan run, shuffleboard, tennis, volley ball, badminton and hand ball courts, plus a large ball field and a camp for children. The club house proper has a complete dining room, steam room, massage room, sleeping rooms, locker area, outside decks and lounge area. Riviera has a membership enrollment of 331 families, and attracts approximately 25,000 people during the summer months. There can be no doubt that Riviera is a bona fide club and fully complies with the requirements of the Liquor Code. The Board so found.

The pivotal issue presented by this appeal is whether a private country club, which provides athletic, social, and recreational activities for its members, may obtain a license under the statutory exception when the region selected for its location is predominantly residential and there are no resort area type facilities available for the general public. The uncontradicted testimony of the Board's examiner is as follows: "Wilkins Township is basically or approximately ninety (90%) per cent residential. There are some commercial establishments and commercial activities in the Township, but primarily it is a residential area. It does not have any resort or recreational facilities available for the general public any where within the Township". At the hearing, counsel for Riviera stated (italics supplied) "that while Wilkins Township *was not a resort area*, the influx of people caused by the action of the Riviera Country Club *has made it a resort area* in conjunction with two other country clubs and a golf club".[2]

---

[2] Edgewood Country Club, Churchill Country Club, and Penhurst Golf Club. Only the last-named is in Wilkins Township.

It is readily apparent that, if Riviera is to be considered as located within a resort area, such a conclusion must arise from its own development and activities, coupled with the development and activities of similar organizations. However, private country clubs with their various social and athletic facilities are not peculiar to any region in the Commonwealth. If the term "resort area" is to be extended so broadly as to cover Riviera's situation, then a similar designation would apply to any other section of the Commonwealth in which private country clubs may be located. "Such a ruling would stretch the concept of a resort area far beyond anything contemplated by the legislature": *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A. 2d 876.

The resort area exception has been considered by this court in seven prior cases. The first of these was *Bierman Liquor License Case,* supra, 188 Pa. Superior Ct. 200, 145 A. 2d 876, which involved a rural township in Carbon County, a municipality containing excellent facilities for hunting and fishing. It was emphasized in our opinion that facilities for hunting and fishing are not peculiar to any locality in the Commonwealth. In defining the term "resort area" we made the following statement here pertinent: "The proceedings before the legislature at the time of the enactment of the original statute disclose that this exception to the quota rule 'was drafted solely for the purpose of having an equitable distribution of licenses' in areas wherein, at certain seasons, the 'population' is greatly increased, 'making it quite obvious that the usual number of licenses would not be adequate to serve the people'. It is apparent that the legislature contemplated the seasonal influx of a large number of temporary inhabitants and the presence of suitable accommodations for this 'transient population' ".

The *Bierman* case was held controlling in a companion appeal involving another township in Carbon

County. See *Kreiser Liquor License Case,* 188 Pa. Superior Ct. 206, 145 A. 2d 880. Our most recent decision on this type of factual situation is *Andes Grove Rod and Gun Club Liquor License Case,* 201 Pa. Superior Ct. 21, 190 A. 2d 355, which involved a similar township in Luzerne County. Speaking for this court in reversing an order of the court below directing the grant of a license in that case, Judge Flood stated: "The mere fact that the neighborhood affords opportunities for fishing, boating and swimming does not of itself make it a resort area as that phrase is used in the statute".

Our other four decisions fall into a different category. In each of them the region under consideration was clearly a resort area and the main issue was that of necessity for the license. The Board is not pressing that question in the case at bar. *William Penn Sportsmen's Association Liquor License Case,* 196 Pa. Superior Ct. 519, 175 A. 2d 908, involved Loyalhanna Township, Westmoreland County, part of a large and extensively promoted recreational territory known as Laurel Highlands. It was conceded by the Board on appeal that this region was a resort area. The Board's objection was limited solely to the question of necessity for the type of license sought by the applicant. Our companion decision in *Mannitto Haven Liquor License Case,* 196 Pa. Superior Ct. 524, 175 A. 2d 911, involved the same region. *Willowbrook Country Club Liquor License Case,* 198 Pa. Superior Ct. 242, 181 A. 2d 698, involved Allegheny Township, Westmoreland County, an extension of Laurel Highlands. The nature of this general territory as a resort area was in effect admitted by the Board's enforcement officer. The *Willowbrook* decision was affirmed on appeal by the Supreme Court. See *Willowbrook Country Club Liquor License Case,* 409 Pa. 370, 187 A. 2d 154. Our decision in *Wildwood Golf Club Liquor License Case,* 199 Pa. Superior Ct. 353, 185 A. 2d 649, involved a portion of Hampton

Township, Allegheny County, which had been twice before determined by the Board to be a resort area. The premises for which the license was sought immediately adjoined North Park, a vast tract of land owned and operated by the County of Allegheny as a public recreational area. Aside from North Park itself, there were extensive resort area type facilities within a three and one-half mile radius of the applicant's premises.

It is our view that the term "resort area", as used by the legislature, necessarily connotes a territory already given over to resort purposes. This was plainly the factual situation in each of the four cases cited in the preceding paragraph. The applicant club in each of them was situated in an area which had been previously established by the public as a place of resort. The instant factual situation is entirely different. Riviera has done no more than to itself create for its members a place of recreation in a predominently residential community not heretofore considered to be a resort area. If a private country club is to be granted a license under such circumstances and without regard to the quota limitation, the members of the General Assembly must so ordain. We may not resolve Riviera's problem by an unwarranted extention of the resort area exception. To do so would be to emasculate the quota law by judicial legislation.

In conclusion, our view of this record does not disclose that the Board was chargeable with an abuse of administrative discretion in refusing to find that Wilkins Township was a resort area within the meaning of the statute. We are therefore of the opinion that the Board's action in refusing to grant Riviera a club liquor license on the ground that the township quota was exceeded should not have been disturbed by the court below.

Order reversed.

WATKINS, J., dissents.