## Willowbrook Country Club, Inc. Liquor License Case.

Argued April 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*John E. Caputo,* Special Assistant Attorney General, with him *Horace A. Segelbaum* and *George G. Lindsay,* Assistant Attorneys General, and *David Stahl,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*A. C. Scales,* with him *Scales and Shaw,* for appellee.

OPINION BY WRIGHT, J., June 13, 1962:

On March 24, 1961, Willowbrook Country Club, a nonprofit corporation, filed with the Pennsylvania Liquor Control Board an application for a catering club liquor license at premises in Allegheny Township, Westmoreland County. The Board refused the application on the basis of the following findings of fact: "1. As provided by law, Allegheny Township, Westmoreland County, has a quota of three licenses for the retail sale of liquor and malt beverages, and there are at present five such licenses in effect of the type counted against

the quota. Accordingly, the license quota is exceeded. There is also one club liquor license in the township which, under the law, is not counted against the quota. 2. The premises proposed to be licensed are not in a resort area, as claimed by the applicant. 3. There is no evidence of necessity for an additional license for the retail sale of liquor and malt beverages in the township". The Court of Quarter Sessions of Westmoreland County sustained an appeal by the applicant, and directed that the license should be issued. The Board has appealed to this court. For a proper understanding of the factual situation, we set forth the findings made by the hearing judge as follows:

"1. That the Willowbrook Country Club, Inc., is the owner of two hundred thirteen acres of land in Allegheny Township, Westmoreland County, Pennsylvania, which land is located three miles from Route 780, about four miles from Route 380, approximately two miles from Route 356, and four miles from Route 56.

"2. That the Willowbrook Country Club, Inc., was chartered on November 15, 1956, by the Courts of Westmoreland County, and the purpose for which it was incorporated was to promote and build a club resort and recreational area.

"3. That the property is located in an area of scenic beauty, approximately fifteen miles from Loyalhanna Dam, a summer recreational area; approximately six miles from Kiski Valley Park; approximately four miles from Weaver's Riding Stable and a seven acre lake for fishing, skating and boating and other recreational facilities.

"4. That Weaver's Riding Stables and Lake have attracted five to six thousand people yearly and plans are being formulated for additional recreational facilities, which will attract many more people.

"5. That no facilities are available in the immediate vicinity for food and refreshments.

"6. That erected on said property is an eighteen hole golf course; a six thousand square foot club house with kitchen facilities, dining area to accommodate three hundred people; an eight million gallon fishing lake; a sixteen acre camping grounds; softball fields, skeet and trap shooting facilities; an area for archery and the roads and fairways used for skiing and tobogganing in the winter.

"7. That there is considerable land available in the vicinity for private summer cottages, and plans have been formulated for the erection of fifty or more cottages.

"8. That the club has at present 465 members and an investment in excess of $300,000.00.

"9. That the members come from a wide area, New Kensington, Monroeville, Turtle Creek, Swissvale, Dravosburg, Pitcairn, East McKeesport, Verona, Wilkinsburg, Irwin, Braddock, Leechburg, Freeport, Five Point, Salem, Springdale, North Braddock, Vandergrift, Murrysville, Clairton, Wilmerding".

The Board first contends that: "Applicant's club premises are not located within a resort area". In *Bierman Liquor License Case,* 188 Pa. Superior Ct. 200, 145 A. 2d 876, in defining the term "resort area", we made the following statement: "The proceedings before the legislature at the time of the enactment of the original statute disclose that this exception to the quota rule 'was drafted solely for the purpose of having an equitable distribution of licenses' in areas wherein, at certain seasons, the 'population' is greatly increased, 'making it quite obvious that the usual number of licenses would not be adequate to serve the people'. It is apparent that the legislature contemplated the seasonal influx of a large number of temporary inhabitants and the presence of suitable accommodations for this 'transient population' ". See also *Kreiser Liquor License Case,* 188 Pa. Superior Ct. 206, 145 A. 2d 880.

Willowbrook Country Club is situated in a fast growing recreational district which is actually an extension of Laurel Highlands, recently considered by us in *William Penn Sportsmen's Association Liquor License Case,* 196 Pa. Superior Ct. 519, 175 A. 2d 908, and *Mannitto Haven Liquor License Case,* 196 Pa. Superior Ct. 524, 175 A. 2d 911. The nature of this general territory was virtually admitted by the Board's enforcement officer, who testified as follows: "Q. Would you say, Mr. Beierschmitt, that it is rapidly developing into a resort area? A. I can say it has a potential of becoming one . . . Q. Then with all of that you would consider that this district is at least beginning as a recreational and resort area? A. It appears to be beginning to be one. Or developing, and it has the potential to develop into one". Our examination of the instant record leads us to conclude that the area in question comes within the quoted definition.

The Board's second contention is that: "There is no actual necessity for an additional catering club liquor license in Allegheny Township". However, as we pointed out in the *William Penn Sportsmen's Association* and *Mannitto Haven* cases, the requirement of necessity in a resort area must be considered in the light of the circumstances under which the applicant operates. "The term 'actual necessity' in determining the need for a liquor license will be given a broad construction so as to mean substantial need in relation to the pleasure, convenience and general welfare of the persons who would make use of the facility".[1] It is readily apparent that the instant catering club license will supply a service which cannot be adequately furnished by the existing licensed establishments. We agree with Judge SCULCO "that the applicant has produced sufficient tes-

---

[1] DAVIS, P. J., in *Minnichbach License,* 24 Pa. D. & C. 2d 749.

timony to show there is a necessity for the facilities which the Willowbrook Country Club can provide".

Order affirmed.